UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DALLAS SMITH CORP., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WORKHORSE CUSTOM CHASSIS, LLC, ) <br> ) <br> Defendant. ) | 1:07-cv- 0828 -JDT -WTL <br> CASE NO._____ |

## COMPLAINT

Plaintiff, Dallas Smith Corp., for its Complaint against Defendant, Workhorse Custom Chassis, LLC, states as follows:

### I. PARTIES, JURISDICTION, AND VENUE

1. Dallas Smith Corp. ("DSC") is an Indiana corporation formed under Indiana law, having its principal place of business located in Greencastle, Indiana. DSC is a supplier of suspension arms used in the manufacture of various commercial motor vehicles with a low floor chassis.

2. Workhorse Custom Chassis, LLC ("WCC") is a limited liability company formed under Illinois law, with its principal place of business located in Highland Park, Illinois. The membership of this limited liability company is, upon information and belief, comprised solely of Navistar International Corporation (d/b/a International Truck and Engine Corporation), which is an Illinois corporation with its principal place of business located in Warrenville, Illinois.

3. Accordingly, there is complete diversity of citizenship between the parties. Further, because the amount in controversy exceeds $75,000, this Court has jurisdiction over this matter pursuant to 28 USC §1332.

4. At all relevant times, WCC has operated a manufacturing facility in Union City, Indiana. At that facility, WCC manufactured at all relevant times commercial chassis used to produce cargo vans, recreational vehicles and shuttle buses.

5. Venue in this District is proper pursuant to 28 USC §1391.

## II. FACTUAL ALLEGATIONS

6. After over eight (8) months of discussions and negotiations, the parties' authorized representatives executed a written contract on June 5, 2003. A true and accurate copy of that contract is attached hereto and incorporated herein as Exhibit A (hereinafter, the "Agreement").

7. The Agreement states that DSC would sell exclusively to WCC certain quantities of "Product" – which is defined therein as a set of cast suspension arms designed for use with certain vehicles having a low floor chassis.

8. Paragraph 4.1 of the Agreement obligated WCC to purchase by no later than September 30, 2005 a "guaranteed" minimum of one thousand (1,000) units of the Product.

9. Paragraph 4.1 of the Agreement also provided for the possibility that WCC could lose the exclusive right to purchase the Product from DSC, but that WCC's obligation to purchase the guaranteed minimum of 1,000 units of the Product was not affected by such loss or by any other contingency, as follows:

> "Termination of the Exclusive Period does not relieve WCC of its guaranteed obligation to purchase said 1,000 of the product."

10. Pursuant to the Agreement's Exhibit B, WCC is obligated to pay $2,000.00 each for the first fifteen (15) units of the Product, and $1,468.38 each for the next one thousand (1,000) units of the Product, for a total of $1,498,380.

11. To date, WCC has purchased only approximately one hundred thirty-three (133) units of the Product, totaling the approximate dollar amount of $203,268.84.

12. In further relevant part, the Agreement provides as follows:

> 7.1. "This Agreement shall…terminate on June 30, 2007."
>
> \* \* \* \*
>
> 7.5. "Termination of this Agreement for any cause shall not relieve either party hereto from any obligation accrued prior to such termination or from any liability to the other party for breach of this Agreement."
>
> \* \* \* \*
>
> 11.1. "This Agreement shall be construed under and governed by the laws of the State of Indiana.
>
> \* \* \* \*
>
> 11.5. "No failure or delay to act upon any default or to exercise any right, power or remedy hereunder will operate as a waiver of any such default, right, power or remedy."
>
> \* \* \* \*
>
> 11.6. "This Agreement constitutes the entire understanding of the parties with respect to its subject matter and supersedes all prior and contemporaneous oral or written negotiations, agreements and understandings. This Agreement may not be modified or amended except in writing duly signed by authorized persons on behalf of the parties hereto."
>
> \* \* \* \*
>
> Exhibit B, ¶8. "In the event there is any conflict between the terms and conditions of this Agreement and the terms and conditions that appear on any purchase order or other documents issued by WCC, this Agreement shall govern."

13. In September of 2005, the President of WCC confirmed in writing that the terms of the Agreement are unambiguous, and that WCC is bound by its terms – including, expressly, its guaranteed obligation to purchase 1,000 units of the Product.

### III. BREACH OF CONTRACT

14. DSC incorporates all other allegations of the Complaint herein.

15. WCC has failed to purchase the remaining 882 units of Product, as guaranteed, and has indicated it does not intend to honor that obligation.

16. DSC has informed WCC (repeatedly and in writing) that DSC has not, and is not, waiving WCC's contractual obligation to purchase the remaining approximately 882 units of Product pursuant to ¶4.1 of the Agreement, and DSC has demanded performance from WCC.

17. All conditions precedent and/or subsequent have been satisfied.

18. WCC has breached the Agreement by failing to complete its guaranteed purchase of the 1,000 units of the Product.

19. DSC has been damaged by WCC's breach of the Agreement.

WHEREFORE, Plaintiff prays that this Court grant the following relief:

A. For an award of damages pursuant to IC §26-1-2, et seq.; and

B. For all other or different relief that this Court deems appropriate, based on the law and evidence.

Dated: June ___, 2007                Respectfully submitted,

_____
James M. Hinshaw
Bingham McHale LLP
2700 Market Tower
10 W. Market Street
Indianapolis, IN  46204-4900
(317) 635-8900
(317) 236-9907 (fax)
jhinshaw@binghammchale.com

*Attorney for Plaintiff, Dallas Smith Corp.*

1162186